## SALISBURY v. RUGGIERI.

### No. 13149.

United States Court of Appeals
Ninth Circuit.

June 30, 1952.

As Amended July 3, 1952.

Marvin Osburn, Los Angeles, Cal., for appellant D. B. Salisbury.

Joseph Jaspan, Brooklyn, N. Y., and Leo V. Silverstein, Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

In the United States District Court for the Eastern District of New York, hereafter called the New York court, the United States brought a civil action against Canadian American Company, Inc., and others for the foreclosure of Federal tax liens, for the appointment of a receiver and for other relief. In that action, the New York court made an order appointing appellee, Joseph F. Ruggieri, as receiver of all of the property and assets of Canadian American Company, Inc., and others, including three parcels of land, hereafter called the property, in the Southern District of California. Within ten days after the entry of his order of appointment, the receiver filed in the United States District Court for the Southern District of California, hereafter called the California court, copies of the complaint and his order of appointment.[1] Thereafter, on May 21, 1951, appellant, D. B. Salisbury, wrote the receiver a letter reading as follows:

"We[2] hereby offer to purchase [the property]. Subject to any state of

---

1. See 28 U.S.C.A. §§ 754, 959.

2. In this letter, appellant called himself "we."

facts an accurate survey may show. Free and clear of all encumbrances except:

"(a) General and special city and county taxes of the fiscal year 1951–1952.

"(b) Covenants, conditions, restrictions, reservations and easements of record and approved zoning regulations.

"For the sum of sixty thousand one hundred ten ($60,110) dollars cash, payable as follows: Check of The William Wilson Company for six thousand one hundred ($6,100) dollars, payable to [the receiver's] order, and the balance on or before ten (10) days from date of confirmation of sale.

"This offer is made subject to the conveyance of good and sufficient title, [the receiver] to furnish customary policy of title insurance at a liability of $60,110, showing [the property] free and clear of all encumbrances excepting general and special city and county taxes of the fiscal year 1951–1952 and conditions and restrictions of record, if any, as above provided.

"Taxes of the fiscal year 1951–1952 to be prorated and paid by [appellant] from date of confirmation of sale.

"It is understood that [the property] is owned by [the receiver], and that the completion of this purchase is subject to the confirmation by the appropriate United States district court, it being understood that [the receiver] will take all necessary legal steps immediately to procure confirmation of sale at the earliest possible date.

"It is further agreed that in the event the title is not delivered to [appellant] by reason of failure of the court to approve or by reason of the fact that some other purchaser shall have made a higher bid at a judicial sale or in accordance with the terms of any court order, or by reason of the unmarketable title, the obligation of the

receiver hereunder, or of [appellant] hereunder, shall both be cancelable and both shall be discharged of any liability on their part upon the return of the deposit made hereunder. [The receiver] to furnish a contour-survey by a licensed surveyor at his expense.

"If this offer is accepted, [appellant] shall take title in the names of [appellant] and Verne Salisbury, his wife, as joint tenants.

"It is a part of this offer that the completion of this sale and the delivery of the title policy of [the property] shall be completed on or before July 31, 1951, or the deposit funds be returned to [appellant]."

The $6,100 mentioned in the above quoted letter was deposited with the receiver on or about May 21, 1951. The balance ($54,010) of the offered price was never deposited, paid or tendered.

The receiver never accepted appellant's offer, never complied with its terms and conditions, never made any sale to appellant, never contracted or agreed to make such a sale and was never ordered by any court to do any of these things.

On June 8, 1951, the New York court made an order authorizing the receiver to offer for sale and sell the property at such time and place and in such manner as might be fixed by an order of the California court and authorizing the California court to enter such orders as might be necessary to effectuate "said sale"—meaning, obviously, a sale by the receiver. The New York court never authorized anyone other than the receiver to sell the property or to offer it for sale, nor did the New York court at any time authorize the California court to substitute itself for the receiver.

On July 12, 1951, the California court (Judge Ben Harrison presiding) made an order directing the receiver to sell the California property, at public auction, to the highest bidder or bidders, at Los Angeles, California, on August 13, 1951, and directing that appellant's offer be considered at that time.[3] The California court's order of

---

3. It should be noted that, although the order of July 12, 1951, directed that appellant's offer be considered, it did not direct that it be accepted.

July 12, 1951, was made under and pursuant to the New York court's order of June 8, 1951. Accordingly, the person directed by the California court's order of July 12, 1951, to sell the property on August 13, 1951, was the receiver.

On July 16, 1951, appellant wrote the receiver a letter reading as follows:

"We[4] refer to our letter to you dated May 21st, 1951, in which we offered to purchase [the property]. This offer expires July 31st, 1951.

"We now understand from Mr. Clay Robbins that August 13th, 1951, has been set as the date for the final court hearing in this matter, at which approval will be given for the sale of the property. We, therefore, hereby extend the time limit on our offer to expire at midnight on August 13th, 1951, all other terms and conditions of our letter of May 21st, 1951, to remain unchanged. Further, in the event the court approves the sale of the property to us by midnight August 13th, we will allow a further period to midnight, August 31st, 1951, for completion of documentation and delivery of clear title."

There was no other or further extension of appellant's offer.

The California court's order of July 12, 1951, was not complied with. The receiver did not sell the property or offer it for sale on August 13, 1951. Instead, the California court itself (Judge James M. Carter presiding) offered the property for sale on August 13, 1951, but received no bid therefor. In offering the property for sale, the California court exceeded its authority; for, as stated above, the New York court never authorized anyone other than the receiver to sell the property or to offer it for sale, nor did the New York court at any time authorize the California court to substitute itself for the receiver.

Having received no bid for the property, the California court, on August 13, 1951, stated orally that the property was sold to appellant for $60,110, and that a formal order should be drawn and submitted for signature.[5] The statement that the property was sold to appellant for $60,110 was incorrect. The receiver—the only person authorized to sell the property—never sold it to appellant and could not have done so without accepting appellant's offer and complying with the terms and conditions thereof. This the receiver never did.

The statement that the property was sold to appellant for $60,110 was not an order. The statement that a formal order should be drawn and submitted for signature clearly showed that there was no order then and would be none until one was signed. No order was signed on August 13, 1951; which is to say, no order was made on August 13, 1951. No order declaring that the property was sold to appellant or requiring, directing, approving or confirming such a sale was ever signed; which is to say, no such order was ever made. However, on August 13, 1951, on a sheet of paper labeled "Minutes of the court," [6] the clerk of the California court wrote the following:

"Nature of proceedings

"(1) Public auction, to sell to the highest bidder, of all of the right, title and interest of Jos. F. Ruggieri, receiver, in and to [the property]; pursuant to order of July 12, 1951, and notice of sale;

"(2) Consideration of the offer of [appellant] to purchase [the property];

"(3) Hearing such other and further business as may properly come before the court in connection with such sale.

"Court makes a statement and announces it will now receive any bids over the bid of [appellant] in amount of $60,110.

"No other bid is made, and

---

4. In this, as in his previous letter, appellant called himself "we."

5. What such formal order should say or contain was not indicated.

6. Rule 79 of the Federal Rules of Civil Procedure 28 U.S.C.A. designates the books and records which clerks of United States district courts must keep and use in civil actions. "Minutes" are not mentioned in Rule 79 or elsewhere in the Federal Rules.

"Ruling

"It is ordered that [the property] be sold to [appellant] for the sum of $60,-110; counsel for receiver to prepare and present written order thereon.

"Edmund L. Smith, Clerk."

This writing of the clerk—which the California court and the parties have called a minute order [7]—was not an order [8] and had no effect.

August 13, 1951, passed without appellant's offer being accepted, without the terms and conditions thereof being complied with, and without any sale of the property to appellant or any approval or confirmation of such a sale. Consequently, appellant's offer expired at midnight of August 13, 1951. Thereafter appellant had no right whatever under or in respect of his offer except the right to a return of the $6,100 deposited by him with the receiver.[9]

On August 15, 1951—after appellant's offer expired—Theodore J. Ticktin offered to purchase the property for $80,000 and deposited with the receiver $10,000 of the offered price.

On August 31, 1951, the California court (Judge James M. Carter presiding) made an order containing five numbered paragraphs. Paragraph 1 vacated and set aside the so-called minute order of August 13, 1951, and declared it to be of no force or effect. Actually, as shown above, the so-called minute order was not an order and never had any force or effect. Therefore paragraph 1 was useless. However, though useless, it was innocuous. Paragraph 2 directed the receiver to sell the property at public auction and directed that Ticktin's offer be considered at such sale. Paragraph 3 required Ticktin to deposit an additional $10,000 with the receiver. Paragraph 4 directed the receiver to pay a broker's commission of $3,000. Paragraph 5 directed the receiver to return to appellant the $6,100 deposited by him with the receiver. Thus paragraph 5—the only paragraph which affected appellant at all—

affected him favorably. Obviously, he was not aggrieved or adversely affected by any of the paragraphs.

On September 4, 1951, the receiver complied with paragraph 5 of the order of August 31, 1951, by returning to appellant the $6,100 deposited by him with the receiver. This the receiver did by delivering to appellant a check for $6,100, which appellant received and accepted on September 4, 1951.[10] Thus the only paragraph of the order of August 31, 1951, which affected appellant at all was fully executed and complied with. He nevertheless appealed from that order on September 26, 1951.

On October 25, 1951, the California court (Judge Ben Harrison presiding) made an order which, in effect, granted appellant a stay of further proceedings for the sale of the property, conditioned upon his filing, in connection with his appeal from the order of August 31, 1951, a supersedeas bond in the sum of $20,000, and provided that, unless such bond was filed on or before October 26, 1951, the sale would be made. The order of October 25, 1951, was unduly favorable to appellant; for, having no right, title or interest in or to the property, he was not entitled to a stay of proceedings for the sale thereof, conditioned upon his filing a bond, or at all. Obviously, he was not aggrieved or adversely affected by the order of October 25, 1951. He nevertheless appealed from that order on October 26, 1951.

The receiver has moved to dismiss both appeals—the appeal from the order of August 31, 1951, and the appeal from the order of October 25, 1951. The motion is granted for the following reasons:

Neither the order of August 31, 1951, nor the order of October 25, 1951, was a final decision, within the meaning of 28 U.S.C.A. § 1291. Hence neither order was appealable. Appellant was not aggrieved or adversely affected by the order of August 31, 1951, or by the order of October 25, 1951. Hence he had no right to appeal from

---

7. The term "minute order" is not found in the Federal Rules of Civil Procedure.

8. See Weldon v. United States, 9 Cir., 196 F.2d 874.

9. See appellant's letters of May 21, 1951, and July 16, 1951, quoted above.

10. Appellant cashed the check on October 29, 1951, and retained the proceeds.

either order. If (contrary to our view) appellant had a right to appeal from the order of August 31, 1951, he waived it by accepting and retaining the $6,100 returned to him on September 4, 1951. If (contrary to our view) the appeal from the order of October 25, 1951, was a valid appeal, it is rendered moot by the dismissal of the appeal from the order of August 31, 1951.

Appeals dismissed.